**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

DAWN CARAPELLA,

    Plaintiff,

v.                                                                       Case No: 8:18-cv-2396-T-36CPT

STATE FARM FLORIDA INSURANCE
COMPANY and STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY,

    Defendants.
_____

# **O R D E R**

Plaintiff moves to remand this action alleging common law bad faith and breach of fiduciary duty (Doc. 17). Defendants filed a response in opposition (Doc. 29), and Plaintiff filed a reply in support of her motion (Doc. 37). Because Defendants, as the removing parties, have not met their heavy burden to show that joinder of a non-diverse defendant was fraudulent, the Court will grant Plaintiff's Motion to Remand.

## **I.    BACKGROUND**

Plaintiff, Dawn Carapella ("Plaintiff"), as Bankruptcy Trustee of the Estate of Kristina Gaime ("Gaime"), Debtor, sued Defendant State Farm Florida Insurance Company ("SF Florida") and Defendant State Farm Mutual Automobile Insurance Company ("SF Auto") (collectively, "Defendants") in the Thirteenth Judicial Circuit in and for Hillsborough County, Florida (the "state court") on August 16, 2018. Doc. 2. Plaintiff's complaint alleges that Defendants each breached a duty of good faith and assumed fiduciary duty to Gaime by failing to accept a settlement offer at

the time they undertook her defense in an underlying tort lawsuit. Doc. 2 at ¶¶ 26-47. Plaintiff's complaint alleges as follows.

SF Auto issued an insurance policy to Gaime, number G03 2043-F28-59C (the "auto policy"), which afforded automobile bodily injury coverage with a limit of $250,000.00 per accident. Doc. 2 at ¶ 7. SF Florida issued an insurance policy to Gaime, number 59-GB-9031-5 (the "homeowner's policy") which afforded homeowner's personal liability coverage with a limit of $100,000.00 per occurrence. Doc. 2 at ¶ 9. Both policies were in effect on April 12, 1999. Doc. 2 at ¶¶ 8, 10.

On April 12, 1999, Gaime drugged her two minor sons at her residence and placed them in an automobile with herself. Doc. 2 at ¶¶ 11-12. Gaime ran the automobile's motor within a closed garage before removing herself and her sons. Doc. 2 at ¶ 12. One son, Matthew Rotell, died. Doc. 2 at ¶ 12. The other son, Adam Rotell, sustained serious bodily injuries. Doc. 2 at ¶ 12. The Estate of Matthew Rotell, Adam Rotell, and the boys' father, Stephen Rotell (collectively, the "Rotells"), sued Gaime, among others, for wrongful death and bodily injury (the "Tort Lawsuit"). Doc. 2 at ¶ 13. Gaime tendered her defense to Defendants under the auto policy and homeowner's policy. Doc. 2 at ¶¶13-14. Defendants both provided Gaime with a defense under a reservation of rights. Doc. 2 at ¶ 15.

SF Auto and SF Florida commenced declaratory actions (collectively, the "Declaratory Judgment Actions" and together with the Tort Lawsuit, the "Underlying Litigation") seeking judgments that they each owed Gaime no duty to defend or indemnify with respect to the Tort Lawsuit. Doc. 2 at ¶¶ 16-17. The Rotells' counsel offered a settlement to Gaime: the Tort Lawsuit would be stayed between the Rotells and Gaime during the pendency of the Declaratory Judgment Actions, and, if the Declaratory Judgment Actions resulted in a finding of no coverage, then Gaime

would be dismissed as a defendant in the Tort Lawsuit (the "Tort Lawsuit Settlement Offer"). Doc. 2 at ¶ 18. Gaime's counsel expressed that Gaime wished to accept the Tort Lawsuit Settlement Offer; however, Defendants each rejected it. Doc. 2 at ¶ 19.

In the Declaratory Judgment Actions, Defendants each obtained declarations of no coverage to Gaime with respect to the Tort Lawsuit. Doc. 2 at ¶ 21. Defendants terminated their defense of Gaime in the Tort Lawsuit, and she proceeded in the Tort Lawsuit *pro se.* Doc. 2 at ¶ 23. The Tort Lawsuit proceeded to trial by jury. Doc. 2 at ¶ 24. Final judgment was entered against Gaime. Doc. 2 at ¶ 24. The Estate of Matthew Rotell was awarded $2,000,000.00; Stephen Rotell was awarded $250,302,368.00; and Adam Rotell was awarded $252,500,000.00. Doc. 2 at ¶ 24.

Defendants removed the instant action to this Court on September 27, 2018 on the basis of diversity jurisdiction. Doc. 1 at ¶¶ 8-9. In the Notice of Removal, Defendants allege that the properly joined parties—Plaintiff, a Florida citizen, and SF Auto, an Illinois citizen,—are completely diverse in citizenship.[1] Doc. 1 at ¶¶ 8-9. As for SF Florida, a Florida citizen, Defendants assert that it was fraudulently joined and that its citizenship should be disregarded for purposes of assessing diversity jurisdiction. Doc. 1 at ¶ 10. Defendants argue that it was State Farm Fire and Casualty Company ("SF Fire"), an Illinois citizen, that issued the homeowner's policy to Gaime. Doc. 1 at ¶¶ 13-16, 25. According to Defendants, SF Florida never had a contractual relationship with Gaime. Doc. 1 at ¶¶ 13-16, 25. Moreover, Defendants argue, even if SF Florida did issue the homeowner's policy, there is no possibility that Plaintiff could have a bad faith claim against SF Florida because a court already decided that the issuer of the homeowner's policy had no duty to defend or indemnify Gaime with respect to the Tort Lawsuit. Doc. 1 at ¶¶ 17-21.

---

[1] Defendants allege in the Notice of Removal that the amount in controversy is $504,802,368—the amount of the unsatisfied Tort Lawsuit judgment against Gaime. Doc. 1 at ¶ 29. Plaintiff does not dispute that the amount in controversy exceeds $75,000.

Defendants reiterate these arguments in their response to Plaintiff's remand motion. Doc. 29. In their response, Defendants assert that it was SF Fire—not SF Florida—that issued the homeowner's policy, and that any references to SF Florida in the Underlying Litigation were scrivener's errors. Doc. 29. Defendants provide evidence,[2] including affidavits, in support of this position.

Plaintiff's remand motion, filed October 18, 2018, argues that SF Florida is not fraudulently joined because Plaintiff has at least the possibility of stating a claim against SF Florida. Doc. 17. Plaintiff offers its own evidence, discussed *infra*, suggesting a possibility that SF Florida had more to do with the Underlying Litigation than Defendants suggest.

## II.    LEGAL STANDARD

Removal of cases to federal court is governed by 28 U.S.C. § 1441, which provides in part that "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." *Id*. § 1441(a). Federal courts must construe removal statutes strictly, and all doubts about jurisdiction are resolved in favor of remand. *Univ. of S. Ala. v. Am. Tobacco Co*., 168 F.3d 405, 411 (11th Cir. 1999).

The party seeking to invoke a district court's subject matter jurisdiction must show that the underlying claim is based upon either the existence of a federal question (i.e., "all civil actions arising under the Constitution, laws, or treaties of the United States") or diversity jurisdiction

---

[2] "[I]n a factual challenge to subject matter jurisdiction, a district court can consider extrinsic evidence such as deposition testimony and affidavits." *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335-36 (11th Cir. 2013) (quotation marks omitted).

(cases in which the parties are of diverse citizenship and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs"). *See* 28 U.S.C. §§ 1331-1332.

With respect to diversity jurisdiction, an action involving non-diverse parties "may nevertheless be removable if the joinder of non-diverse parties is fraudulent." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1359 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot*, 204 F.3d 1069 (11th Cir. 2000). Fraudulent joinder—a "judicially created doctrine that provides an exception to the requirement of complete diversity"—occurs when "a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction." *Triggs v. John Crump Toyota*, 154 F.3d 1284, 1287 (11th Cir. 1998); *Henderson v. Wash. Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006).

The removing party bears a "heavy" burden to prove fraudulent joinder, which it must do by clear and convincing evidence. *Henderson*, 454 F.3d at 1281; *Crespo v. Coldwell Banker Mortg.*, 599 Fed. Appx. 868, 871 (11th Cir. 2014). If the removing party meets its burden, a district court "must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." *Henderson*, 454 F.3d at 1281.

### III. DISCUSSION

#### A. Defendants Fail to Prove Fraudulent Joinder

Fraudulent joinder may be found in three instances: (1) "when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant"; (2) "when there is outright fraud in the plaintiff's pleading of jurisdictional facts"; or (3) "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Triggs*, 154 F.3d at 1287. With respect to the first instance, a

plaintiff "need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Id.* (emphasis in original). "If there is even a *possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Id.* (quoting *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41(11th Cir. 1983) (emphasis in original), *superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993)).

Defendants argue that Plaintiff cannot possibly prove a cause of action against SF Florida, the non-diverse defendant, because (1) evidence shows SF Florida did not issue the homeowner's policy and is incorrectly named in this lawsuit; (2) even if SF Florida did issue the homeowner's policy and was correctly named in this lawsuit, Florida law prohibits a bad faith claim against an insurer who is declared to have no duty to defend or indemnify; (3) Florida law precludes a bad faith claim against an insurer who rejects a *Cunningham* or like settlement agreement; and (4) the statute of limitations has run. The Court addresses each of Defendants' contentions in turn.

   1. *The evidence does not show that there is no possibility that SF Florida is a proper defendant*

Defendants argue, adamantly, that SF Florida had nothing to do with the homeowner's policy and had no relationship with Gaime at any point. Rather, Defendants contend, any reference to SF Florida in the Underlying Litigation was merely the result of scrivener's errors. In support, Defendants provide the following evidence: (1) a copy of the homeowner's policy, with the heading "State Farm Fire and Casualty Company" (Doc. 2-1 at p. 42); a stipulated final state court judgment providing that the homeowner's policy does not provide coverage, without specific reference to the issuer of the homeowner's policy (Doc. 2-1 at p. 148); the Declaration of Heather

6

Barnett, Fire Underwriter for SF Fire, averring that SF Florida did not issue the homeowner's policy and that "[a]t no time did there exist any contractual relationship between" SF Florida and Gaime (Doc. 3 at pp. 1-2); the Declaration of attorney Michael Kiernan ("Kiernan"), who avers that he filed a declaratory action on behalf of SF Fire and that the identification of the plaintiff in that case as SF Florida was a scrivener's error (Doc. 29-1); the Declaration of Kristy Stapleton that SF Fire and SF Florida are separate entities (Doc. 29-2); the Declaration of Karen Hodge that SF Fire issued the homeowner's policy and that SF Fire did not transfer ownership of the homeowner's policy to SF Florida (Doc. 29-3); the Declaration of Dana R. Doig that SF Fire—not SF Florida—handled the claim and defended the Tort Lawsuit against Gaime (Doc. 29-4); a letter from the Rotells' attorney to SF Fire requesting disclosure of insurance information for the homeowner's policy pursuant to Section 627.4137, Florida Statutes (Doc. 29-6); a disclosure to the Rotells' counsel identifying the insurer of the homeowner's policy as SF Fire (Doc. 29-7); a reservation of rights letter to Gaime from SF Fire, as identified in the signature block (Doc. 29-8, at p. 5); and Gaime's homeowner's insurance application requesting coverage with SF Fire (Doc. 29-9).

But Plaintiff's evidence paints a slightly different picture. Plaintiff offers the following: documents in the Underlying Litigation referring to SF Florida, including an attorney's letter discussing "SF Florida's" position on the Tort Lawsuit Settlement Offer (Doc. 17-1); a copy of a complaint for declaratory relief naming SF Florida as the plaintiff in the case caption and throughout (Doc. 17-2); a copy of the homeowner's policy which includes (1) an address associated with SF Florida's principal place of business, per SF Florida's amended articles of incorporation and (2) the signatures of SF Florida's secretary and another SF Florida director and incorporator, per SF Florida's articles of incorporation (Doc. 17-3; Doc. 17-4); a certification of

7

records dated August 2008 providing a copy of the homeowner's policy by "the custodian of records pertaining to the issuance of policies issued by the Fire Operations Division of State Farm Florida Insurance Company of Winter Haven Florida" (Doc. 17-5); and a joint stipulation and agreement between SF Florida and the Rotells stating, among other things, that "State Farm Florida Insurance Company issued a policy of homeowner's insurance, policy number 59-GB-9031-5" (Doc. 17-6).

Upon full consideration of the evidence, the Court cannot conclude that there is no possibility that SF Florida is a proper defendant in this litigation. The Court first addresses the multiple references to SF Florida in the Underlying Litigation. Defendants attempt to explain this discrepancy by way of the Kiernan Declaration. Kiernan avers that he and his law firms have represented various State Farm entities, including SF Fire, SF Auto, and SF Florida. Doc. 29-1 at ¶ 5. However, over time after 1999, the vast majority of Kiernan and his firms' work was done for SF Florida, and it became "increasingly rare to encounter" a SF Fire matter. Doc. 29-1 at ¶ 6. Kiernan and his firm were retained in the Underlying Litigation in 2008, at which time handling matters related to an SF Fire homeowner's policy was considered an anomaly. Doc. 29-1 at ¶ 9. These facts, Kiernan avers, account for the scrivener's errors in the Underlying Litigation identifying SF Florida instead of SF Fire. Doc. 29-1 at ¶ 10.

While the Kiernan Declaration may offer one reasonable explanation for the discrepancy, the Court cannot credit it as the only explanation in light of the conflicting evidence. Given the factual dispute, the Court cannot simply cast aside documents from the Underlying Litigation, especially those drafted to have binding legal effect. It was specifically stipulated to in the Underlying Litigation that "State Farm Florida Insurance Company issued a policy of homeowner's insurance, policy number 59-GB-9031-5." To disregard that plain language in favor

of one possible explanation from an attorney for one side in the Underlying Litigation would be to relieve Defendants of their high burden of proof in this case. This the Court will not do.

More telling in this case is Plaintiff's evidence of some relation between SF Fire and SF Florida, particularly in light of Defendants' position that SF Fire and SF Florida have nothing to do with each other. Plaintiff's evidence that the homeowner's policy contains an address associated with SF Florida's principal place of business and the signature of SF Florida's secretary and another SF Florida director and incorporator, as well as the certification from the "custodian of records pertaining to the issuance of policies issued by the Fire Operations Division of State Farm Florida Insurance Company of Winter Haven" providing a copy of the homeowner's policy, suggests that SF Florida had or has more to do with SF Fire or with the homeowner's policy than Defendants submit. There may be a reasonable explanation that points in Defendants' favor. But Defendants do not offer an explanation.

*2. The evidence does not show that there is no possibility of a bad faith claim*

Defendants next argue that even if SF Florida had issued the homeowner's policy or was otherwise a proper defendant to this lawsuit, Plaintiff could not possibly state a claim for bad faith against it because a court in the Underlying Litigation already determined that the homeowner's policy offered no coverage to Gaime in connection with the Tort Lawsuit.

When an insurance company is handling claims against its insured, it "has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." *Perera v. U.S. Fid. and Guar. Co.*, 35 So. 3d 893, 898 (Fla. 2010) (citations omitted). "This duty includes an obligation to settle 'where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so.'" *Id.* (quoting *Boston*

*Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980)). A breach of this duty may give rise to a cause of action for bad faith against the insurer. *Id.* As courts have recognized:

> [t]he essence of a 'bad faith' insurance suit . . . is that the insurer breached its duty to its insured by failing to properly or promptly defend the claim (which may encompass its failure to make a good faith offer of settlement within the policy limits)—all of which results in the insured being exposed to an excess judgment.

*Fid. & Cas. Co. of N.Y. v. Cope*, 462 So. 2d 459, 460 (Fla. 1985) (quoting *Kelly v. Williams*, 411 So. 2d 902, 904 (Fla. 5th DCA 1982)).

Generally, under Florida law, the "liability of an insurer depends upon whether the insured's claim is within the coverage of the policy." *Spencer v. Assurance Co. of Am.*, 39 F.3d 1146, 1149 (11th Cir. 1994). That is, "without the existence of coverage . . . a claim for bad faith generally cannot exist." *Stephens v. Dairyland Ins. Co.*, No. 5:12-cv-442-Oc-99MMH, 2013 WL 3771228, at *4 (M.D. Fla. July 17, 2013).

But Florida state courts and courts in this district have recognized that an insurer may owe a duty—and breach such a duty—where it voluntarily undertakes one or where circumstances create one, even in the absence of coverage. *Calhoon v. Leader Specialty Ins. Co.*, No. 2:06-cv-425-FtM-29SPC, 2007 WL 4098840, at *4 (M.D. Fla. Nov. 15, 2007) (quoting *Allstate Indem. Co. v. Oser*, 893 So.2d 675, 677 (Fla. 1st DCA 2005) (footnote omitted)). Such circumstances may exist where an insurer "exercise[es] full control over the settlement of non-covered claims" or "affirmatively assum[es] a duty to settle the non-covered . . . claims and then fail[s] to act in good faith as to such an undertaking." *Stephens v. Dairyland Ins. Co.*, No. 5:12-cv-442-Oc-99MMH, 2013 WL 12155825, at *5 (M.D. Fla. Nov. 26, 2013). As the *Stephens* court explained:

> [T]here are cases that suggest that despite the lack of express coverage, an insurance company may owe its insured a duty of good faith with respect to a non-covered claim where it expressly undertakes such a duty or where circumstances (though they are not explicitly delineated in the cases) create it. *See, e.g., Ging v. American Liberty Ins. Co.*, 423 F.2d 115, 120-21 (5th Cir. 1970); *Calhoon*, 2007 WL

4098840, at *4 (noting that while Florida law expressly states that liability of an insurer depends on whether a claim is within the coverage of the policy, an insurer may owe a duty to settle even without coverage if it undertook such a duty or the circumstances created such a duty). In *Ging*, for example, the court broadly stated that "once having undertaken the defense of a non-covered claim, the insurance company is under an obligation to act in good faith towards its insured to the entire extent of its undertaking." 423 F.2d 115, 120-21 ([e]mphasis added). For purposes of applying *Ging* to a subsequent case (such as this one), it is critical to understand the extent of the undertaking in order to determine the extent of the duty.

2013 WL 3771228, at *4.

Despite Defendants' argument that Plaintiff cannot possibly state a claim because there is no coverage, it appears Plaintiff could, possibly, have the ability to do so. Whether Plaintiff ultimately can do so will depend on the facts specific to the Underlying Litigation, including SF Florida's actions—if any—and whether and to what extent it undertook to defend Gaime. Not all of those details are presently before the Court. Thus, all that is left for the Court to do is to recognize the *possibility* that Plaintiff can state a claim for bad faith against SF Florida.

> 3. *There is insufficient evidence to show that Defendants rejected a specific type of settlement offer and the Court cannot determine on that basis that there is no possibility of a bad faith claim*

A line of cases have held that an insurer has no duty to accept certain offers on behalf of its insured, and cannot be sued for bad faith for failure to accept such offers. *See Kropilak v. 21st Century Ins. Co.*, 806 F.3d 1062, 1069-70 (11th Cir. 2015) (holding that under Florida law an insurer had no duty to enter into a *Cunningham* agreement—an agreement to try a bad faith action before the underlying tort action—and had no duty to enter into a consent judgment in excess of the policy limits) (analyzing *Cunningham v. Standard Guar. Ins. Co.*, 630 So. 2d 179 (Fla. 1994)). Here, Defendants contend Plaintiff cannot possibility state a claim for bad faith against SF Florida

because the Tort Lawsuit Settlement Offer that was rejected was an offer which Defendants had no obligation to accept.

Defendants argue that the Tort Lawsuit Settlement Offer in the Underlying Litigation was like that in *Kropilak*—a consent judgment in excess of the policy limits which would have allowed the injured parties to sue the insurer for bad faith in order to collect the excess damages. In support, Defendants offer the Declaration of attorney Bryan W. Reynolds. Reynolds avers that the Tort Lawsuit Settlement Offer was amended to include a stipulation that the value of the Rotells' claims against Gaime in excess of the policy limits would be established by consent and that Gaime would assign her rights under the homeowner's policy and auto policy to the Rotells (Doc. 29-5).

But this is just one account of the Tort Lawsuit Settlement Offer. Plaintiff offers evidence that the initial Tort Lawsuit Settlement Offer only suggested such a stipulation. Given that the Tort Lawsuit Settlement Offer was subject to ongoing negotiations, *see* Doc. 17-1, it is unclear precisely what terms Defendants did or did not reject. Because it is not determinable at this stage whether SF Florida rejected an offer with terms akin to *Cunningham* or *Kropilak*, the Court cannot say that Plaintiff has no possibility of stating a claim for bad faith against SF Florida.

> *4. There is not sufficient evidence to show that the statute of limitations has run, and the Court cannot determine on that basis that Plaintiff has no possibility of stating claims*

"A cause of action accrues when the last element constituting the cause of action occurs." *Kelly v. Lodwick*, 82 So. 3d 855, 857 (Fla. 4th DCA 2011) (quoting Fla. Stat. § 95.031(1)). "The last element constituting a cause of action for negligence or breach of fiduciary duty is the occurrence of damages." *Id.* (citing *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003)).

Defendants argue the four-year statute of limitations began to run in this case when they, allegedly, refused the Tort Lawsuit Settlement Offer and withdrew their defense of Gaime in 2011. But Plaintiff's complaint alleges that the harm occurred in 2016 when judgment was entered against Gaime in the Tort Lawsuit in excess of the policy limits. Doc. 2 at ¶¶ 32, 36, 43, 47. The Court cannot determine, therefore, that Plaintiff has no possibility of stating a claim based on the statute of limitations.

Defendants failed to carry their heavy burden to show that Plaintiff fraudulently joined SF Florida, and the Court cannot disregard SF Florida's citizenship for purposes of diversity jurisdiction. Remand is proper.

**B. No Basis to Exercise Jurisdiction Pursuant to Bankruptcy Statutes**

As an additional basis for the Court's jurisdiction, Defendants maintain that the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b) because this case is "related to" the bankruptcy case *In re Kristina Gaime*, No. 8:18-bk-5198-RCT, in the Bankruptcy Court for the Middle District of Florida (the "Bankruptcy Case"). The Court disagrees.

Removal is generally governed by 28 U.S.C. § 1441; however, a party may remove a civil action from state court to the appropriate district court when the civil action "arises under" Title 11 of the bankruptcy code or "arises in" or is "related to" cases under Title 11 of the bankruptcy code. 28 U.S.C. § 1452(a); 28 U.S.C. § 1334(b). *See also Perry v. Fla. Trucking Co.*, No. 8:09-cv-2328-T-27EAJ, 2010 WL 299255, at *1 (M.D. Fla. Jan. 21, 2010). Under 28 U.S.C. § 1334(c)(2), however, when the civil action is merely "related to" a case under Title 11, a district court

> must abstain from hearing [the civil action] state law claim if (1) the claim has no independent basis for federal jurisdiction other than § 1334(b); (2) the claim is a non-core proceeding; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court.

*In re EZ Pay Servs., Inc.*, 390 B.R. 421, 424 (Bankr. M.D. Fla. 2007).

Here, first, there is no independent basis for federal jurisdiction other than § 1334(b). As discussed above, SF Florida, a non-diverse defendant, is not fraudulently joined. The Court cannot exercise diversity jurisdiction over this case.

As for the second prong, Defendants argue this case "appears to be a 'core' proceeding" of the Bankruptcy Case because the instant lawsuit against Defendants is the only meaningful asset of Gaime's estate. Citing *Matter of Celotex Corp.*, 152 B.R 667, 673 (Bankr. M.D. Fla. 1993) for support, Defendants contend their potential liability is "the linchpin of the" Bankruptcy Case. But *Matter of Celotex Corp.* dealt with a Chapter 11 proceeding, not a Chapter 7[3] proceeding as is the case here. The *Matter of Celotex Corp.* court found the distinction important. *See* 152 B.R. at 673-74 ("Probably one of the most important considerations is the type of bankruptcy the debtor has filed."). Indeed, the *Matter of Celotex Corp.* court recognized the greater likelihood of a case being deemed a "core" proceeding where the debtor filed a Chapter 11 reorganization petition than where a Chapter 7 petition was filed. *Id.* The other case Defendants rely on, *In re A&D Care, Inc.*, 90 B.R. 138 (W.D. Pa. 1988), also involved a Chapter 11 petition.

The Eleventh Circuit has described the legislative history and jurisprudence behind distinguishing core and non-core proceedings.

> Congress created the distinction between core and non-core proceedings in the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("1984 Act"), Pub.L. No. 98-353, 98 Stat. 333, in order to avoid the constitutional problems, identified in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), associated with the expansive bankruptcy court jurisdiction permitted under prior law. 28 U.S.C. § 157(b)(2) lists fourteen specific types of actions that are considered core proceedings, *id.* § 157(b)(2)(A)-(N), and provides a fifteenth, catch-all category for "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship," *id.* § 157(b)(2)(O ). The statutory list provides that it is not intended to be exhaustive of the entire universe of core proceedings.

---

[3] Plaintiff alleges that the Bankruptcy Case was filed under Chapter 7. Doc. 37 at p. 8, n. 6.

14

*In re Toledo*, 170 F.3d 1340, 1347 (11th Cir. 1999) (some internal citations omitted, footnote omitted). Because the statutory list is not exhaustive, courts look beyond the list and to the purpose of the statute to determine whether a proceeding is "core." *Id.* at 1348.

> If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding.

*Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987), *cited in In re Toledo*, 170 F.3d at 1348. The *Wood* court's interpretation was based on the purpose of the 1984 Act, enacted due to concern about "the plenary adjudication by bankruptcy courts of proceedings 'related only peripherally to an adjudication of bankruptcy.'" *In re Toledo*, 170 F.3d at 1349 (quoting *Northern Pipeline*, 458 U.S. at 92 (Burger, C.J., dissenting)).

The instant action is not a core proceeding. Plaintiff's claims are state law breach of contract claims that do not "invoke a substantive right created by the federal bankruptcy law." *In re Toledo*, 170 F.3d at 1349. Rather, such "garden variety state law" claims could "clearly occur outside of bankruptcy." *Id.*; *In re SOL, LLC*, 419 B.R. 498, 504 (Bankr. S.D. Fla. 2009).

The third prong is easily established: this proceeding was commenced in state court. As for the fourth prong, whether the action can be adjudicated timely in state court, Defendants argue "it is well known that Florida state courts are slower and more overcrowded than federal courts." For analogy, Defendants cite to one Florida bankruptcy case, *In re Antol Restoration, Inc.*, 444 B.R. 481, 487 (Bankr. S.D. Fla. 2011). But *In re Antol Restoration, Inc.* merely pointed out that the backlog of cases in one circuit court in one Florida county was "more daunting" than one particular Bankruptcy Judge's case backlog at one particular point in time. 444 B.R. at 487. There is no

evidence in this case to suggest that this action cannot be timely adjudicated in state court. *Perry*, 2010 WL 299255, at *1.

Even if mandatory abstention was not appropriate, given the facts of this case, the Court would exercise its discretion under 28 U.S.C. § 1334(c)(1) to abstain and remand. *See Perry*, 2010 WL 299255, at *1. Pursuant to § 1334(c)(1): "Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

That Plaintiff's claims of breach create a "garden variety state law" case supports abstention and remand in the interest of comity with state courts or respect for state law. *Perry*, 2010 WL 299255, at *2 Plaintiff's case entirely involves state law issues. Under such circumstances, remand is appropriate.

## IV. CONCLUSION

Defendants have failed to meet their high burden to prove that the non-diverse defendant, SF Florida, is fraudulently joined. Moreover, there is no basis for the Court to exercise jurisdiction pursuant to the above cited bankruptcy statutes.

Accordingly, it is hereby **ORDERED:**

1. Plaintiff's Motion to Remand (Doc. 17) is **GRANTED.**
2. This case is **REMANDED** to the Circuit Court of the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida.
3. The Clerk is directed to send a certified copy of this Order to the Clerk of Court of the Thirteenth Judicial Circuit, in and for Hillsborough County, Florida.
4. The Clerk is further directed to terminate all pending deadlines and motions, as

moot, and to close this case.

**DONE AND ORDERED** in Tampa, Florida on February 8, 2019.

Charlene Edwards Honeywell
United States District Judge

**Copies to:**
Counsel of Record and Unrepresented Parties, if any